## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **JAMES OXENDINE DBA SOUTHEAST BULLY KENNELS** **Plaintiff** v. **BLOCKLINE BULLIES, LLC and STEVEN COKER** **Defendants** | **JUDGE JAMES D. CAIN, JR.** **CASE: 2:24-cv-00740** **MAGISTRATE JUDGE LEBLANC** |

## JAMES OXENDINE'S STATEMENT OF CONTESTED FACTS AND GENUINE MATERIAL ISSUES OF FACT EXIST IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

James Oxendine respectfully submits his opposition to defendants' motion for summary judgment; submits these contested facts; and asserts that the following genuine materials issues of fact exist to defendants' statement of uncontested facts in support of their motion for summary judgment. A genuine issue of material fact exists that:

1. The registered mark Block Bloodline is an invalid mark due to it being generic, or in the alternative descriptive, with no acquired distinctiveness, and thus his registered trademark should be cancelled; (2) "Block" and "bloodline" should be interpreted separately, and thus both words, taken separately, are generic or in the alternative descriptive with no acquired distinctiveness; (3) Steven Coker and Blockline Bullies, L.L.C. have priority use over "Blockline Bullies" in the Gulf South Region since as early as 2018; (4)Block is a surname, due to Mr. Chris "Block" Delhommer; (5) The defendants have submitted dictionary

evidence showing that Block is associated with animal breeding services; (6) James Oxendine dba Southeast Bully Kennels only has priority use of Block Bloodline in North Carolina; (7)James Oxendine is an unknown bully breeder.; (8) Block is generic to class 044, namely animal breeding services of bully dogs; (9) Block is descriptive, without acquired distinctiveness, to class 044, namely animal breeding services of bully dogs; (10) The composite Block Bloodline, taken as a whole, is generic to class 044, namely animal breeding services of bully dogs; (11) The composite Block Bloodline, taken as a whole, is descriptive, without acquired distinctiveness, to class 044, namely animal breeding services of bully dogs; (12) James Oxendine misled the court by attesting that to the best of his knowledge, no other entity has the right to use the applied for mark "Block Bloodline" or any similar trademark in commerce; and (13) James Oxendine made claims of having a patent for "Block Bloodline".

WHEREFORE, James Oxendine prays that due to the contesting of the above facts, that there are multiple genuine issue material facts and that this honorable court should DENY the defendants' Motion for Summary Judgment in whole and cast the costs on the defendants.

Respectfully submitted,                                    August 14, 2024

BELLE TERRE LAW FIRM, L.L.C.
2900 Westfork Dr. Suite 401
Baton Rouge, LA 70827
Phone: 225-443-9592
Email: contact@belleterrelaw.com
By: /s/ Chareese "Queen" Haile, Esq.
Chareese "Queen" Haile, Esq.
The Veiled Lawyer®
La. Bar Roll #39729
Attorney for James Oxendine

**Table of Contents of Memorandum In Opposition**

Material Facts Contested/Genuine Issue....................................................................................1

I.      Premature Motion For Summary Judgment....................................................................8

II.     A Genuine Issue of Material Fact Exists as to Parties Names in Mover's Statement of Uncontested Facts ..........................................................................................................9

III.    A Genuine Issue of Material Fact Exists as to Defendants' Claims the Registered Mark "Block Bloodline" is Invalid………………………………………………………………………10

IV.     A Genuine Issue of Material Fact Exists to the Words "Block" and "Bloodline" when Used Separately are Generic………………………………………………………………………11

V.      Trademark Law is Clear on the Meaning of Generic……………………………………………………..12

VI.     Objection to Surname Claim……………………………………………………………………15

VII.    Defendants' Statement of Uncontested Facts Only Lists Genericness………………………………………………………………16

VIII.   Registered Mark Block Bloodline is Suggestive………………………………………………………………16

IX.     Genuine Issue of Material Facts Exists for Secondary Meaning………………………………………………………………… 17

        a.  Factor One: Length and Manner of Use of the Mark or Trade Dress……………18

        b.  Factor Two: Volume of Sale……………………………………………………19

        c.  Factor Three: Amount and Manner of Advertising………………………….19

        d.  Factor Four: Nature of the use of the mark…in newspapers and magazines……19

        e.  Factor Five: Lack of Consumer Survey Evidence………………………………..20

        f.  Factor Six: Direct Consumer Testimony………………………………………..20

        g.  Factor Seven: Defendants' Intent on Copying the Mark………………………..20

        h.  Combination of Factors May Establish the Necessary Link……………………21

X.      A Genuine Issue of Material Facts Exists to Defendants' Claims that "Blockline Bullies" is Protected Under the First Use Doctrine………………………………21

        a.  North Carolina Location.......................................................................22

    b.   Continuity of Use/Tacking...................................................................22

**XI.**   A Genuine Issue Of Material Fact Exists As To First Use In Gulf South Region....23

**XII.**   Genuine Issue Of Material Fact Exists As To Date Of First Use……………………24

**XIII.**  Conclusion………………………………………………………………………………26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.1976).* ....................................11

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 86 USPQ2d 1527 (D.C. Cir. 2008). ....................................................................................................................................24

Amazing Spaces, 608 F.3d at 234 (quoting Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co. (Smack Apparel), 550 F.3d 465, 474 (5th Cir.2008) ). ......................................11

Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 237 (5th Cir.2010) ; 15 U.S.C. § 1057(b). ..15

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)* ...........................................................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). ......................................................7

Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y.1921) ......................................................11

*Confederated Tribes of Colville Reservation v. United States*, 964 F.2d 1102, 1109 (Fed. Cir. 1992) ........8

El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5th Cir. 1954) (27 third-party registrations of the mark "Chico," "El Chico" and other similar names). ........................................................................13

*Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996)* ..............................................7

Hana Financial, Inc. v. Hana Bank, 574 U.S. 418, 420-421, (2015). ................................................21

*Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995)* .......................................................7

*Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993).............7

*Nola Spice Designs*, 783 F.3d at 546 .................................................................................19

Nola Spice Designs, LLC v. Haydel Enterprises, 783 F. 3d 527 (5th Circuit Court of Appeals 2015). 15

*Park 'N Fly*, 469 U.S. at 194, 105 S.Ct. 658 .......................................................................11

Smack Apparel, 550 F.3d at 474 ......................................................................................16

Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc., 41 F.3d 223, 227 (5th Cir.1995) (internal quotation marks, citation, and alterations omitted). ................................................12

Sugar Busters LLC v. Brennan, 177 F.3d 258, 268 (5th Cir.1999). ..................................................11

Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex., 909 F.2d 839, 847 (5th Cir.1990)........................................................................................................11

United States ex rel. Taylor–Vick v. Smith, 513 F.3d 228, 230 (5th Cir.2008). ....................................7

<u>United States Pat. & Trademark Off. v. Booking.com B. V.</u>, 591 U.S. 549, 140 S. Ct. 2298, 207 L. Ed. 2d 738 (2020). Pg. 549. ................................................................................................10

United States Pat. & Trademark Off. v. Booking.com B. V., 591 U.S. 549, 556, 140 S. Ct. 2298, 2304, 207 L. Ed. 2d 738 (2020) ...................................................................................................................10

United States Pat. & Trademark Off. v. Booking.com B. V., 591 U.S. 549, 560, 140 S. Ct. 2298, 2306, 207 L. Ed. 2d 738 (2020). ..................................................................................................................10

*United States v. Gaudin,* 515 U.S. 506, 512, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). .........................22

Viacom Int'l v. IJR Cap. Invs., L.L.C., 891 F.3d 178, 190 (5th Cir. 2018). ............................................19

*Xtreme Lashes, LLC, 576 F.3d at 232* .....................................................................................................11

Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 793 (5th Cir.1983 ............................15

## Statutes

37 C.F.R. §2.127(e)(1); .............................................................................................................................8

## Other Authorities

TMEP §206.02 ..........................................................................................................................................19

## Trademark Trial and Appeal Board Manual

TBMP §528.02 ...........................................................................................................................................8

## PinPoint Citations

Def.['s] Decl., ⌐ 1, ECF No. 19-6 ............................................................................................................17

Def.['s] Mem. Opp'n Prelim. Inj., 7 footnote 9, June 28, 2024, ECF No. 10-1 ......................................20

Def.['s] Mot. Summ. J. Ex. D, ECF 19-4. ...............................................................................................18

Def.['s] Mot. Summ. J. Ex. D, ECF No. 19-4. .........................................................................................19

Def.['s] Statement of Uncontested Facts, July 24, 2024, ECF. No. 19-1 ...................................................8

Defs.['] Ex. C, 444-446, July 24, 2024, ECF. No. 19-3. .........................................................................13

Defs.['] Mem. in Supp. of Mot. for Summ. J., 430-437, ECF No. 19. July 24, 2024. ............................14

Defs.['] Mem. in Supp. Opp'n of Defs.['] Opp'n to Pl.['s] Mot. For Inj. Relief, ⌐ 1 at 1, June 28, 2024, ECF. No. 10-1 ........................................................................................................................................14

Defs.['] Mem. in Supp. Opp'n of Defs.['] Opp'n to Pl.['s] Mot. For Inj. Relief, ⌐ 1 at 2, June 28, 2024, ECF. No. 10-1 ........................................................................................................................................18

Defs.['] Mot. For Summ. J., July 24, 2024, ECF. No. 19-5. ....................................................................12

Defs.[']Ex. 2, 1-4, June 28, 2024, ECF. No. 10-3. ..................................................................................12

Defs.['s] Ex. 3, at 6, July 18, 2022, ECF. No. 10-4. ...............................................................................16

ECF. No. 15-6 ...........................................................................................................................................12

Oxendine Reply Br. Ex. 1, 1, July 03, 2024, ECF No. 15-4. ...................................................................18

Oxendine Reply Br. Exs. 3-4, July 03, 2024, ECF No. 15-5. ..................................................................18

Oxendine Trademark Reg. No. 7155100, Ex. A, ECF No. 1-1. ..................................................................9

Oxendine's Ex. B5, May 31, 2024, ECF No. 1-2. ....................................................................................17

Oxendine's Ex. C1, December 7, 2018, ECF No. 1-3 ..............................................................................16

## Lahnam Act

§1141g .......................................................................................................................................................19

§33 (15 U.S.C. §1115(a)). ..........................................................................................................................9

15 U.S.C. §1057(c) and §1141f(b) ...........................................................................................................19

15 U.S.C. §1126(d) ................................................................................................19

15 U.S.C.A. § 1051 et seq. ......................................................................................13

Lanham Trade-Mark Act § 1 .................................................................................13

**Local Rules of Court**

LR 5.7.13 ...............................................................................................................13

**Trademark Trial and Appeal Board Cases**

*Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134 (TTAB2013). .................................19

*Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, 60 U.S.P.Q.2d 1733, 2001 WL 1512024, at *3 (T.T.A.B. 2001) ...........................................................................................................15

*Zirco Corp. v. Am. Tel. & Tel. Co.*, 21 USPQ2d 1542 (TTAB1991) ....................................19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JAMES OXENDINE**<br>**DBA SOUTHEAST BULLY**<br>**KENNELS**<br>**Plaintiff**<br>**v.**<br><br>**BLOCKLINE BULLIES, LLC and**<br>**STEVEN COKER**<br>**Defendants** | **JUDGE JAMES D. CAIN, JR.**<br><br>**CASE: 2:24-cv-00740**<br><br><br>**MAGISTRATE JUDGE  LEBLANC** |

## JAMES OXENDINE'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES James Oxendine who objects to and opposes Steven Coker and Blockline Bullies L.L.C.'s motion for summary judgment for the following:

1. Declaring that Plaintiff's trademark registration of "Block Bloodline" is terminated and/or dissolved, and the Plaintiff's complaint is dismissed with prejudice, all at the Plaintiff's cost.

2. That the Defendants' use of the terms "Blockline Bullies" is protected under the "first use" doctrine and the Plaintiff's complaint is therefore dismissed with prejudice, all at the Plaintiff's cost.

James Oxendine contends that there are multiple genuine issues of material facts, and thus the movers' motion for summary judgment should be denied in whole; and the defendants' shall be cast with the costs of these proceedings.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[1] A material fact is a fact that could matter to (have legal impact on) the outcome of the case.[2] The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.[3] A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."[4] A non-movant is given the benefit of the doubt that a genuine issue of material facts exists.[5] A genuine dispute of material fact exists when the " 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "[6] In reviewing a grant of summary judgment, [the court views] all evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor.[7]

## I.    <u>PREMATURE MOTION FOR SUMMARY JUDGMENT</u>

Under Federal Rules of Civil Procedure 56, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery. Here, there have been no Federal Rules of Civil Procedure 26 initial disclosures. Thus, no discovery has commenced in this matter.

---

[1] *Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).*
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).
[3] *Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).*
[4] *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).*

[5] *Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993).
[6] Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir.2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986) ).
[7] United States ex rel. Taylor–Vick v. Smith, 513 F.3d 228, 230 (5th Cir.2008).

A cancellation proceeding may occur within the Trademark Trial and Appeal Board and Federal Court. In the Trademark Trial and Appeal Board, motions for summary judgment shall not be filed until after service of initial disclosures unless based on 1) claim or issue preclusion or 2) lack of Board jurisdiction.[8] This matter is filled with fact intensive issues. For fact-intensive issues, the trial court has the discretion to deny summary judgment.[9] The plaintiff asks this court to implement the federal law of motion for summary judgments, regarding cancellation proceedings of registered marks, and deny the defendants' motion for summary judgment, at defendants' cost.

## II.    A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO PARTIES NAMED IN MOVER'S STATEMENT OF UNCONTESTED FACTS

The Defendants filed a Statement of Uncontested Facts in support of their Motion for Summary Judgment. Their Statement of Uncontested Facts state:

"[t]his Statement of Uncontested Facts is filed on behalf of the petitioning creditors, Bradley and Tracy Day, ("Petitioners") in support of their Motion for Summary Judgment filed against Terry Graham, Inc. ("Debtor" or "Graham Trucking")."[10]

Here, this is not a bankruptcy case, but a trademark infringement case filed on behalf of James Oxendine, proper plaintiff, who is the registered owner of "Block Bloodline" in class 044 for animal breeding services. Bradley and Tracy Day and Terry Graham Trucking, Inc. are not parties to this case. The proper defendants are Steven Coker and Blockline Bullies L.L.C. Additionally, James Oxendine has never claimed that he owns a patent or made patent claims in this matter. The

---

[8] 37 C.F.R. §2.127(e)(1); TBMP §528.02.
[9] *Confederated Tribes of Colville Reservation v. United States*, 964 F.2d 1102, 1109 (Fed. Cir. 1992).

[10] Def.['s] Statement of Uncontested Facts, July 24, 2024, ECF. No. 19-1.

defendants are relying upon Mr. Oxendine's statements in his specimen description in his trademark application, "We have created a man made bloodline named Block Bloodline in the American Bully and Exotic Bullybreed". (Defs.['] Ex. 3, at 2, July 17, 2022, ECF. No.10-4). This statement does not constitute a patent claim.

Therefore, a genuine issue of material fact exists in the name of the plaintiff, defendants, federal issue, and this Court should deny the defendants' motion for summary judgment in whole.

### III.    A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO DEFENDANTS' CLAIMS THAT THE REGISTERED MARK "BLOCK BLOODLINE" IS INVALID

The BLOCK BLOODLINE registered mark is currently valid and enforceable. The law is clear, [a] mark registered on the principal register…and owned by a party to an action shall be admissible in evidence and shall be *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein.[11] Here, James Oxendine's registered mark, BLOCK BLOODLINE, is *prima facie* admissible evidence that he has the exclusive right to use BLOCK BLOODLINE in connection with class 044, animal breeding services, as identified in the class description.[12] Thus, the defendants' claims that the registered mark BLOCK BLOODLINE is invalid, creates a genuine issue of material fact and this court should deny their motion for summary judgment in whole.

---

[11] §33 (15 U.S.C. §1115(a)).
[12] Oxendine Trademark Reg. No. 7155100, Ex. A, ECF No. 1-1.

### IV.    A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE WORDS "BLOCK" AND "BLOODLINE" WHEN USED SEPARATELY ARE GENERIC

The registered mark "Block Bloodline" is a composite mark. Thus, the mark should not be interpreted separately and is not generic. Here, the mover contends that the registered mark shall be interpreted separately to determine genericness. This is a misinterpretation of trademark law. The non-mover asserts that the registered mark "Block Bloodline" is a compound term. In booking.com, the court held that "booking.com" unlike the term "booking" standing alone—is not generic.[13] The court also rejected the PTO's contention that, as a rule, combining a generic term like "booking" with ".com" yields a generic composite.[14] The defendants are relying on the disclaimer of "Bloodline", which is generic to animal breeding services (of all types of animals). Upon this reliance, the defendants are attempting to isolate "Block" and render it generic to the breeding of bully dogs. The registered mark BLOCK BLOODLINE is a compound term and must be taken as a whole. For a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation.[15]

Furthermore, the defendants have not shown that no genuine issue of material facts exists as to "Block Bloodline" taken *as a whole* is generic to animal breeding services. The defendants have not even shown that "Block" is generic to the bully breeding business. A compound of generic elements is generic if the combination yields no additional meaning *to consumers* capable of

---

[13] United States Pat. & Trademark Off. v. Booking.com B. V., 591 U.S. 549, 140 S. Ct. 2298, 207 L. Ed. 2d 738 (2020). Pg. 549.
[14] Id.
[15] United States Pat. & Trademark Off. v. Booking.com B. V., 591 U.S. 549, 556, 140 S. Ct. 2298, 2304, 207 L. Ed. 2d 738 (2020).

distinguishing the goods or services.[16] Therefore, a genuine issue of material fact exists and the defendants' motion for summary judgment should be denied in whole.

## V.    <u>TRADEMARK LAW IS CLEAR ON THE MEANING OF GENERIC</u>

James Oxendine objects to the movers' motion for summary judgment arguing that there is no genuine issue of material fact that "Block Bloodline" is generic. Trademark law is clear on the meaning of generic. A generic name is the name of a class of products or services. A generic term is one that refers to the genus of which the particular product is a species.[17] To assess the distinctiveness of a word mark, [the Fifth Circuit] relies on the spectrum set forth by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.1976)*. Abercrombie divided marks into five categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful.[18] While suggestive, arbitrary, and fanciful marks are inherently distinctive, generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired "secondary meaning."[19] categorizing a term, we must examine the context in which the term is used.[20] We consider "how [the term] is used with other words," "the products or services to which it is applied," and "the audience to which the relevant product or service is directed."[21] "[T]he question is, 'What do the buyers understand by the word for whose use the parties are contending?'"[22]

---

[16] <u>United States Pat. & Trademark Off. v. Booking.com B. V.</u>, 591 U.S. 549, 560, 140 S. Ct. 2298, 2306, 207 L. Ed. 2d 738 (2020).
[17] *Park 'N Fly*, 469 U.S. at 194, 105 S.Ct. 658.
[18] Id at 2.
[19] Sugar Busters LLC v. Brennan, 177 F.3d 258, 268 (5th Cir.1999).
[20] Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex., 909 F.2d 839, 847 (5th Cir.1990).
[21] Id.
[22] Id. (quoting Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y.1921) (Hand, J.))

Although "summary judgment is rarely appropriate" on the factual question of categorization, *Xtreme Lashes, LLC, 576 F.3d at 232,* [the court] may affirm a grant of summary judgment where the "'record compels the conclusion that the movant is entitled to judgment as a matter of law.'"[23] Here, the record does not compel the conclusion that the defendants are entitled to judgment as a matter of law. Steven Coker and Blockline Bullies LLC argue that the registered mark "Block Bloodline" is not entitled to trademark protection because it is generic, or alternatively, because it is descriptive and has not acquired secondary meaning. The record's evidence is absent of any proof that James Oxendine produces bullies made of "blocks" (i.e. toy lego-styled bullies). The record's evidence is also absent of any proof that "block" taken separately is generic to class 044–animal breeding services of bully dogs.

Looking to ECF. No. 15-6, the court will see that some of the top bloodlines of bully dogs do not even contain the name "block". The defendants have submitted ECF. No. 19-5 in support of the usage of the Blockline Bullies.[24] Upon further inspection, this is inadmissible evidence. This document does not list any names of any particular bloodline, it only lists individual names of breeders (which includes Mr. Coker's name). This is also a relatively new bully award show, with the inaugural award show having taken place on July 13, 2024. Further reiterating, "A generic term is the name of a particular genus or class of which an individual article or service is but a member." Amazing Spaces, 608 F.3d at 241 (citation omitted); see also Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 974 (8th Cir.2006) ("A generic term ... refers to the common name or nature of the article."). "The test for genericness is whether the public perceives the term primarily as the

---

[23] Amazing Spaces, 608 F.3d at 234 (quoting Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co. (Smack Apparel), 550 F.3d 465, 474 (5th Cir.2008) ).

[24] Defs.['] Mot. For Summ. J., July 24, 2024, ECF. No. 19-5.

designation of the article." Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc., 41 F.3d 223, 227 (5th Cir.1995) (internal quotation marks, citation, and alterations omitted).

Here, the registered mark "Block Bloodline" is registered for class 044–animal breeding services. The defendants have not produced any evidence that shows that there is no genuine issue of material fact that "Block Bloodline" is generic to animal breeding services of bully dogs. James Oxendine directs this court to the vast, yet erroneous amount of evidence that the defendants have attempted to submit, to support their claims of "genericness".[25] The defendants submitted a list of Facebook (Meta) searches of names of animal breeding services that contained the names "Block". Defendants have submitted ECF No. 10-3 to support their allegations of extensive third-party usage of "block" being generic to animal breeding services. There were twenty-two (22) listed names including the name "block". Upon further investigation of the named pages, about eight (8) of those businesses are actively using the name in commerce with class 044. The Court has informed us in El Chico Inc. that twenty-seven (27) third-party uses of the common word(s) is sufficient for a finding against likelihood of confusion.[26]

Evidence informing whether consumers in fact perceive a term as the name of a class or, instead, as a term capable of distinguishing among members of the class, such that the term is generic, for federal trademark registration purposes, can include not only consumer surveys, but also dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning.[27] Here, the evidence submitted by the defendants does not substantiate a claim for widely used nor generic. The names listed in ECF. No. 10-3 do not sound similar, nor confusingly similar. Upon further inspection, the following listed names do

---

[25] Defs.['']Ex. 2, 1-4, June 28, 2024, ECF. No. 10-3.
[26] El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5th Cir. 1954) (27 third-party registrations of the mark "Chico," "El Chico" and other similar names).
[27] Lanham Trade-Mark Act § 1. See also 15 U.S.C.A. § 1051 et seq.

not prove that "Block" is associated with being generic or descriptive to the breeding of bullies. James Oxendine has submitted this evidence (ECF. No. 15-3) attached as Schedule A and its supporting Supplemental Exhibits 1-24 (ECF. No. 15-7).[28] More specifically, ECF. No. 15-7, exhibits 23-25, provide dictionary usage. The exhibits do not show that "Block Bloodline" is generic to the breeding of bully dogs. James Oxendine objects to the defendants' submission of ECF. No. 19-3.[29] Under LR 5.7.13 material accessed by hyperlinks are not part of the record. Hyperlinks are simply convenient mechanisms for accessing material cited in a filing. Here, ECF. No 19-3 is inadmissible evidence. It is a scheduled list, and only has hyperlinks to access the cited material. Thus, a genuine issue of material fact exists.

## VI.  OBJECTION TO SURNAME CLAIM

James Oxendine objects to ECF. No. 19-2, as there is no surname issue in this case. The defendants have not and cannot submit any evidence that "Block Bloodline" received a surname refusal from the USPTO. Furthermore, the defendants stated in ECF. No. 10-1, that the word "block" in "Blockline Bullies" allegedly derives from Mr. Chris Delhommer's nickname of "Block".[30] A nickname is not a surname. Thus, a genuine issue of material fact exists.

## VII.  DEFENDANTS' STATEMENT OF UNCONTESTED FACTS ONLY LISTS GENERICNESS

In the defendants' statement of uncontested facts they argue that the words "block" and "bloodline", when used separately, are generic terms. The defendants did not state, affirm, nor

---

[28] Oxendine's Schedule A, 1-4, July 3, 2024, ECF. No. 15-3. *See also* Oxendine's Supp. Exs. 1-25, 1-143, July 3, 2024, ECF. No. 15-7.
[29] Defs.['] Ex. C, 444-446, July 24, 2024, ECF. No. 19-3.
[30] Defs.['] Mem. in Supp. Opp'n of Defs.['] Opp'n to Pl.['s] Mot. For Inj. Relief, ¶ 1 at 1, June 28, 2024, ECF. No. 10-1.

declare that descriptiveness is uncontested. In defendants' memorandum in support of their motion for summary judgment, they argue genericness and then ask the court to consider the mark descriptive if it finds that the mark is not generic.[31] Furthermore, James Oxendine contends that "Block Bloodline" is suggestive of animal breeding services in Class 044. This creates a genuine issue of material facts as to whether the defendants are arguing that Block Bloodline is descriptive or generic.

## VIII.    THE REGISTERED MARK BLOCK BLOODLINE IS SUGGESTIVE

A descriptive term is one that "identifies a characteristic or quality of the article or service."[32] A central inquiry to assess descriptiveness is the "imagination test," which "seeks to measure the relationship between the actual words of the mark and the product to which they are applied.[33] A second test to determine descriptiveness is "whether competitors would be likely to need the terms used in the trademark in describing their products.[34] A suggestive term is one which "suggests rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services."[35] An oft-cited example of a suggestive term is "Penguin" as applied to refrigerators.[36]

Here, the Defendants have not shown proof of genericness nor descriptiveness of the use of BLOCK BLOODLINE being used to describe breeding services of bullies. In addition, a human being would have to close their eyes to picture a "Block" shaped bully. Therefore, the registered

---

[31] Defs.['] Mem. in Supp. of Mot. for Summ. J., 430-437, ECF No. 19. July 24, 2024.

[32] Vision Center, 596 F. 2d at 115.

[33] Nola Spice Designs, LLC v. Haydel Enterprises, 783 F. 3d 527 (5th Circuit Court of Appeals 2015).

[34] Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 793 (5th Cir.1983).

[35] Zatarains, 698 F.2d at 791.

[36] Sun Banks of Fla. v. Sun Fed. Sav. & Loan, 651 F.2d 311, 315 (5th Cir.1981) (citing Soweco, supra). See also opinion of district court, Record Excerpts p. 14, citing Sun Banks, supra.

mark BLOCK BLOODLINE is suggestive of class 044 animal breeding services, and should be provided protection from cancellation.

## IX.    GENUINE ISSUE OF FACT EXISTS FOR SECONDARY MEANING

The registration of [James Oxendine's Block Bloodline] mark with the PTO is prima facie evidence that the mark is inherently distinctive.[37] Although secondary meaning is a question of fact, summary judgment may be upheld if the record "compels the conclusion that the movant is entitled to judgment as a matter of law."[38]

Here, the defendants rely upon the *Viacom* case to assert and determine the factors of secondary meaning.[39] Upon further review of the *Viacom* case. The case involved the *Krusty Krab* mark (from the famous cartoon SpongeBob Square Pants), owned by Viacom. Because Krusty Krab was not a registered trademark, Viacom had to prove that Krusty Krab was a source identifier, and thus should be granted trademark protection (for an unregistered mark) under the Trademark Act. Viacom was able to establish ownership of the mark as source identifier, but the court held that Viacom failed to prove inherent distinctiveness.

[A] mark can be distinctive in one of two ways. [A] mark is inherently distinctive if [its] intrinsic nature serves to identify a particular source. Even if a mark is not inherently distinctive, it can acquire distinctiveness if it has developed secondary meaning. The district court held that Viacom failed to demonstrate that its mark is inherently distinctive, but that The Krusty Krab had acquired distinctiveness through secondary meaning. Because we agree that the mark has acquired

---

[37] See Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 237 (5th Cir.2010) ; 15 U.S.C. § 1057(b).

[38] Smack Apparel, 550 F.3d at 474; Amazing Spaces, 608 F.3d at 248–50 (affirming grant of summary judgment where plaintiff failed to raise a genuine issue of fact on secondary meaning.)

[39] *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 190 (5th Cir. 2018). See also Defs.['] Mot. For Summ. J., at 13, July 24, 2024, ECF. No. 19.

distinctiveness through secondary meaning, we pretermit consideration of whether the mark is inherently distinctive.[40]

(1) length and manner of use of the mark or trade dress; (2) volume of sale; (3) amount and manner of advertising; (4) nature of use of the mark or trade dress in newspapers and magazines; (5) consumer-survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the trade dress [or mark].

It is important that this court notes that James Oxendine does not concede to Block Bloodline being generic or descriptive. James Oxendine maintains his position that "Block Bloodline" is suggestive to Class 044–animal breeding services. James Oxendine is only responding to the defendants' claims that Block Bloodline is descriptive, with no acquired distinctiveness, so that an objection can be entered (against the claims of no acquired distinctiveness) and a genuine issue of material fact can be found.

### Factor One: Length and Manner of Use of the Mark or Trade Dress

Here, James Oxendine has been using the mark since 2012, as evidenced in his trademark registration's dates of first use. From 2012 to 2024 is twelve years in length of use. The mark has been used in connection with animal breeding services. The defendants' assert that Mr. Oxendine's website bears a copyright of 2024. The 2024 date was to signify that the website was updated in 2024, not created in 2024. Furthermore, the specimen that was submitted with Mr. Oxendine's trademark application clearly contained a screenshot of his website.[41] The website has been in existence prior to 2024. Mr. Oxendine has also submitted evidence of his Instagram page bearing the mark "Block Bloodline" which has posts dating back to 2014. The plaintiff has addressed the kennel certificate registrations (ECF No. 1-3)  in its continuity of use section in this memorandum

---

[40] Id.
[41] Defs.['], Ex. 3, July 19, 2022, ECF No. 10-4.

in opposition. Furthermore, the defendants state in their motion for summary judgment that there has been no other evidence submitted showing that the mark was in use prior to 2022.[42] This is woefully untrue; and creates a genuine issue of material fact. Mr. Oxendine submitted ECF. No. 15-5 on July 3, 2024, in support of his reply brief. This documents contains a screenshot of an Instagram page, owned by Mr. Oxendine, which bears the mark "Block Bloodline". The posts on this page date back to 2014. Thus, because the record clearly shows evidence of Block Bloodline in use prior to 2018, there is a genuine issue of material fact.

### Factor Two: Volume of Sale

The defendants assert that Mr. Oxendine has not provided any evidence of his volume of sales. This is because the entire discovery process has been skipped, by the defendants, in this instant matter. Therefore, because no discovery has been had in accordance with Federal Rules of Civil Procedure 26, a genuine issue of material facts as to the volume of sales exists, and this motion for summary judgment should be denied.

### Factor Three: Amount and Manner of Advertising

Social media and websites are proper channels of advertising. Furthermore, James Oxendine submits into evidence a screenshot of his Facebook page, which bears the mark of "Block Bloodline". This Facebook page has over 100,000 followers and likes. This shows that "Block Bloodline's" social media and website advertising has amassed a large following regarding the registered trademark.[43] Thus, a genuine issue of material fact exists regarding factor three and this motion for summary judgment should be denied.

### Factor Four: Nature of the use of the mark…in newspapers and magazines

The defendants' claims that

---

[42] Defs.['] Mot. For Summ. J. at 14, July 24, 2024, ECF No. 19.
[43] Plaintiff's Opp'n to Mot. for Summ. J., Ex. 4.

"The Mark's own certificate shows that it is without claim to any particular font style, size or color, it does not include any picture or image other than the standard text, and on its face contains the legal disclaimer that "No claim is made to the exclusive right to use the following apart from the mark as shown: 'BLOODLINE'". There is no evidence supplied that shows that the Mark was ever used in a newspaper or magazine.[44]

Here, the disclaimer in the certificate is a disclaimer of the term "Bloodline" in relation to class 044–animal breeding services. This has nothing to do with this factor. In addition, we are now living in a digital world. Mr. Oxendine has used the mark on his website and social media and has submitted evidence in support of. Thus, a genuine issue of material fact exists and this motion for summary judgment should be denied.

**Factor Five: Lack of Consumer Survey Evidence**

The record does not contain consumer-survey evidence as to whether [Block Bloodline] has acquired secondary meaning, but "survey evidence is not required to establish secondary meaning."[45] Thus, a genuine issue of material fact exists as to this factor.

**Factor Six: Direct Consumer Testimony**

There is no direct consumer testimony because the Mr. Oxendine has not had a chance for initial discovery disclosures or a chance at the preliminary injunction hearing set for October 3, 2024.

**Factor Seven: Defendants' Intent on Copying the Mark**

The defendants argue that they had no intent and did not know about the registered mark "Block Bloodline", but their motion for summary judgment argument has been built on the

---

[44] Defs.['] Mot. for Summ. J., at 14-15, July 24, 2024, ECF. No. 19.
[45] Viacom Int'l v. IJR Cap. Invs., L.L.C., 891 F.3d 178, 190 (5th Cir. 2018). Citing _Nola Spice Designs_, 783 F.3d at 546.

argument that "block" and "bloodline" are generic to the bully breeding business. Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.[46] Thus, a genuine issue of material fact exists

**Combination of Factors May Establish the Necessary Link**

"While none of these factors alone will prove secondary meaning, in combination they may establish the necessary link in the minds of consumers between a product and its source."[47] In motion for summary proceedings, the nonmovant is given the benefit of the doubt.[48] Here, there are multiple genuine of issues of fact. Therefore, this motion for summary judgment should be denied.

## X.    A GENUINE ISSUE OF MATERIAL FACT EXISTS TO DEFENDANTS' CLAIMS THAT "BLOCKLINE BULLIES" IS PROTECTED UNDER THE FIRST USE DOCTRINE

A party seeking summary judgment on a claim alleging priority…must show that there is no genuine dispute that it has priority [of the use of the mark].[49] Here, James Oxendine initiated a complaint that the defendants' use of "Blockline Bullies" is likely to cause a likelihood of confusion with his registered mark "Block Bloodline" in Class 044, animal breeding services. Steven Coker and Blockline Bullies LLC assert that they have priority usage over "Blockline Bullies" due to prior 2018 usage in the Gulf South region. Mr. Oxendine submitted ECF. No 15-5

---

[46] *Giant Food, Inc. v. Standard Terry Mills*, Inc., 229 USPQ 955, 962 (TTAB 1986)
[47] Zatarains, 698 F.2d at 795.
[48] *Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993)
[49] See, for example, *Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, 60 U.S.P.Q.2d 1733, 2001 WL 1512024, at *3 (T.T.A.B. 2001).

which reflects an Instagram account bearing the mark "Block Bloodline" dating back to 2014. James Oxendine has submitted admissible evidence, in addition to his registered trademark, that supports the assertion that the defendants have failed to show that there is no genuine dispute of fact to priority usage.

## North Carolina Location

James Oxendine's registered trademark application notates that his trademark is registered in South Carolina. The specimen (evidence of use) in the record is clear. Mr. Oxendine's specimen states "we are located on the border of South Carolina and North Carolina near the city of Charlotte, but we are able to ship our puppies anywhere in the United States and even the world.[50] The specimen clearly reflects that the mark has been in use in commerce throughout the entire United States. Thus, there is a genuine issue of material fact that the defendants used "Block Bloodline" first throughout the Gulf Coast region.

## Continuity of Use/ Tacking

There is a genuine issue of material fact as to first date of use. James Oxendine objects to the movers' assertion that his *American Bully Kennel Club* and *U.S. Bully Registry Office* registration certificates do not support his usage of the registered mark "Block Bloodline". These certificates show some of the bully dogs, namely Block Blood's Buster was born as early as 2015.[51] The defendant avers that the marks listed on the registration certificate do not display "Block Bloodline", but the names do not have to be the exact same to be admissible evidence as to priority usage. The doctrine under which a party may clothe a new mark with the priority position of an older mark is called "tacking."[52]   Generally, two marks may be tacked when the original and

---

[50] Defs.['s] Ex. 3, at 6, July 18, 2022, ECF. No. 10-4.
[51] Oxendine's Ex. C1, December 7, 2018, ECF No. 1-3.
[52] Hana Financial, Inc. v. Hana Bank, 574 U.S. 418, 420-421, (2015).

revised marks are "legal equivalents"; this term refers to two marks that create the same, continuing commercial impression so that consumers consider both as the same mark.[53]

Here, "Block Blood" creates the same, continuing commercial impression so that consumers would consider "Block Blood" to be the same as "Block Bloodline". In addition, James Oxendine demanded a jury trial in this matter. Application of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury. [T]he Supreme Court has long recognized across a variety of doctrinal contexts that, when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer.[54] This is certainly not to say that the United States District Court for the Western District of Louisiana–Lake Charles Division, may never determine whether two marks may be tacked. If the facts warrant it, a judge may decide a tacking question on a motion for summary judgment or for judgment as a matter of law.[55] The Supreme Court has only held that when a jury trial has been requested and when the facts do not warrant entry of summary judgment or judgment as a matter of law, the question whether tacking is warranted must be decided by a jury.[56]

## XI.    A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO FIRST USE IN GULF SOUTH REGION

In Paragraph One (Relevant Facts) of the Defendants Memorandum in Opposition, the defendants assert that since 2018, Mr. Coker and Mr. Joseph "Block" Delhommer began breeding

---

[53] Id.
[54] *United States v. Gaudin,* 515 U.S. 506, 512, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).
[55] Hana Financial, Inc. v. Hana Bank, 574 U.S. 418, 423 (2015). *See also* Fed. Rules Civ. Proc. 50, 56(a).
[56] Hana Financial, Inc. v. Hana Bank, 574 U.S. 418, 420-421, (2015).

and selling American Bully Dogs in the Gulf South Region under the name "Blockline Bullies".[57] Upon information and belief, the Plaintiffs believe that Mr. Coker used the name "Southern Paradise Bullies" on or about October 2018, in connection with breeding American Bully dogs.[58] The evidence consists of what could reasonably be considered an unregistered design mark of "Southern Paradise Bullies". Furthermore, the Defendants aver that they provided the animal breeding services throughout the Gulf South Region. According to the U.S. Fish and Wildlife Service, the Gulf South consists of Florida, Alabama, Mississippi, Louisiana, and Texas.

The defendants have not submitted any evidence of prior use in the states of Florida, Alabama, Mississippi, and Texas.[59] Oxendine has submitted evidence of his use of the mark "Block Bloodline" prior to 2018, in the form of an Instagram page bearing the use of the mark "Block Bloodline"[60]; registered trademark certificate; and bully kennel registration certificates. The Defendants' have only provided evidence of use of the mark "Blockline Bullies" in Louisiana, and not before 2018.[61] Thus, a genuine issue of material fact exists regarding the defendants' use of Blockline Bullies in the entire Gulf South Region.

## XII.    GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO DATE OF FIRST USE

The defendants' claim of first use, rely solely upon Mr. Chris "Block" Delhommer. The defendants argue that since 2018, Block (Mr. Delhommer) began breeding and selling his line of American Bullies "Blockline Bullies" in the Gulf South geographical region. Steven Coker began collaborating with Block, and the two men developed and grew that business name to the point

---

[57] Def.['s] Decl., ℙ 1, ECF No. 19-6.
[58] Oxendine's Ex. B5, May 31, 2024, ECF No. 1-2.
[59] Oxendine Reply Br. Ex. 1, 1, July 03, 2024, ECF No. 15-4.
[60] Oxendine Reply Br. Exs. 3-4, July 03, 2024, ECF No. 15-5.
[61] Def.['s] Mot. Summ. J. Ex. D, ECF 19-4.

where it has a substantial following on social media and in the dog breeding community.[62] The defendants have submitted Louisiana Secretary of State LLC formation documents, which shows that the defendants began commerce in 2022. The defendants have not submitted any evidence of sole proprietorship assignment, LLC assignment, or common law trademark assignment agreements from Mr. Delhommer to Steven Coker and Blockline Bullies LLC. The collaboration is unclear, was Steven Coker a business partner of Mr. Delhommer; was Steven Coker someone who was helping Mr. Delhommer (a sole proprietor) on an independent contractor or affiliate marketer type arrangement? Thus, a genuine issue of material fact exists as to the defendants' ownership and use of "Blockline Bullies" prior to forming a limited liability company in 2022; and this motion for summary judgment should be denied in whole.

For a trademark that has obtained registration, trademark protection starts on the filing date, not the date of registration. Filing *any* application for registration on the Principal Register, including an intent-to-use application, constitutes constructive use of the mark, provided the application matures into a registration.[63]  Here, Mr. Oxendine filed the application on July 7, 2022, prior to BLOCKLINE BULLIES being registered with the Louisiana Secretary of State. Upon registration, filing affords the applicant nationwide priority over others, except: (1) parties who used the mark before the applicant's filing date; (2) parties who filed in the USPTO before the applicant; or (3) parties who are entitled to an earlier priority filing date based on the filing of a foreign application.[64]  Mr. Oxendine's registration, including first dates of use, serves of

---

[62] Defs.['] Mem. in Supp. Opp'n of Defs.['] Opp'n to Pl.['s] Mot. For Inj. Relief, P 1 at 2, June 28, 2024, ECF. No. 10-1.

[63] 15 U.S.C. §1057(c)  and §1141f(b). *See* also *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134 (TTAB2013).

[64] 15 U.S.C. §1126(d) or §1141g  (*see* TMEP §206.02).   *See Zirco Corp. v. Am. Tel. & Tel. Co.*, 21 USPQ2d 1542 (TTAB1991); *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 86 USPQ2d 1527 (D.C. Cir. 2008).

constructive notice to the defendants of his use in commerce of the registered mark "Block Bloodline".

Here, the Defendants have submitted evidence that shows that "BLOCKLINE BULLIES" was used prior to July 7, 2022, but not prior to James Oxendine's use of "Block Bloodline" in 2014.[65] The defendants have not submitted any evidence that supports that there is no genuine issue of material fact that "Blockline Bullies" was in use prior to the dates of first use on James Oxendine's registered trademark certificate. The defendants also stated that they did not keep any records of the use of the mark, specifically conceding:

> "Steven Coker and his wife have not chronicled or memorialized in detail their early efforts of their entry into the dog breeding industry. That was thought not necessary. Had they known that the threat of litigation fomented by a foreign entity was not merely a threat they could have kept a record of their first use of this term."[66]

This is contrary to the integrity of the professional animal breeding industry and creates a genuine issue of material fact of first date of use. The dog breeding industry requires meticulous record keeping to trace and verify lineages, ancestries, and bloodlines. Kennel Clubs and registries also require the submission of these documents in order to verify the authenticity of the bloodlines. Therefore, a genuine issue of material facts exists as to the defendants' claims of first use of "Blockline Bullies" in the Gulf South Region.

## XIII.  CONCLUSION

The defendants have failed to meet their burden in showing that there is no genuine issue of material fact that the registered mark "Block Bloodline" is generic, or in the alternative,

---

[65] Def.['s] Mot. Summ. J. Ex. D, ECF No. 19-4.
[66] Def.['s] Mem. Opp'n Prelim. Inj., 7 footnote 9, June 28, 2024, ECF No. 10-1.

descriptive with no acquired distinctiveness. The defendants have also failed to show that there is no genuine issue of material fact that Steven Coker and Blockline Bullies LLC are protected under the First Use Doctrine for using "Blockline Bullies" in commerce in the Gulf South Region, prior to James Oxendine. The plaintiff has produced admissible evidence rebutting the defendants' claim of priority usage under the "First Use Doctrine". Furthermore, James Oxendine has submitted multiple contested facts that both assert and show that multiple genuine issues of material facts exist. Thus, James Oxendine prays that this honorable court denies the defendants' motion for summary judgment in whole, and allow this matter to proceed to discovery and trial. James Oxendine also prays that the defendants be cast with the costs of this matter.

Respectfully submitted,                                      August 14, 2024

By: /s/ Chareese "Queen" Haile, Esq.
Chareese "Queen" Haile, Esq.
La. Bar Roll #39729
Attorney for James Oxendine